IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HENDRIETTA SALTER,              :

    Plaintiff,                  :

v.                              :     CA 11-00681-C

MICHAEL J. ASTRUE,
Commissioner of Social Security, :

    Defendant.                  :

## MEMORANDUM OPINION AND ORDER

The plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Doc. 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record ("R.") (Doc. 12), the plaintiff's brief (Doc. 13), the Commissioner's brief (Doc. 19), and the parties' presentations during oral argument on July 26, 2012, it is determined that the Commissioner's decision denying the plaintiff benefits should be **reversed and remanded** for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

**Procedural Background**

On November 10, 2008, the plaintiff filed an application for SSI (R. 19, 111-118, 128), alleging disability beginning March 4, 2008, due to heart problems, shortness of breath, high blood pressure, and swelling. Her application was initially denied on January 8, 2009. (*See* R. 19, 63-68.) A hearing was then conducted before an Administrative Law Judge on March 19, 2010 (*see* R. 33-59). On March 26, 2010, the ALJ issued a decision finding that the claimant was not disabled (R. 16-30), and the plaintiff sought review from the Appeals Council (*see* R. 9). The Appeals Council issued its decision declining to review the ALJ's determination on October 12, 2011 (*see* R. 1-7)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on December 2, 2011 (*see* Doc. 1).

**Standard of Review and Claim on Appeal**

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history. *Id.* Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the

Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, the plaintiff asserts three separate claims:

1. The Commissioner erred in posing an impermissibly vague hypothetical question to the vocational expert;

2. The Commissioner erred both in rejecting the opinion of the plaintiff's treating physician and finding that she can perform "light work," a finding which is not supported by the medical opinion of either a treating or examining medical source, or the medical evidence as a whole; and

3. The Appeals Council erred in failing to remand the claim to the Commissioner for consideration of "new and material" evidence.

(Doc. 13 at 3.) Because the Court determines that the decision of the Commissioner should be reversed and remanded for further proceedings based on the plaintiff's

second claim, regarding the RFC determination, there is no need for the Court to consider the plaintiff's other claims.  *See Robinson v. Massanari*, 176 F. Supp. 2d 1278, 1280 & n.2 (S.D. Ala. 2001); *cf. Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

## Discussion

A.   The Commissioner's RFC Assessment.

"Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms."  *Peeler v. Astrue*, 400 Fed. App'x 492, 493 n.2 (11th Cir. Oct. 15, 2010) (per curiam) (citing 20 C.F.R. § 416.945(a)); *see also Hanna v. Astrue*, 395 Fed. App'x 634, 635 (11th Cir. Sept. 9, 2010) (per curiam) ("A claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'") (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004)).   "In making an RFC determination, the ALJ must consider the record evidence, including evidence of non-severe impairments."  *Hanna*, 395 Fed. App'x at 635 (citation omitted).

The ALJ is responsible for determining a claimant's RFC.  *See, e.g.,* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level under  § 416.1429 or at the Appeals Council review level under § 416.1467, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.");  *Hunington ex rel. Hunington v. Astrue*, No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination

made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources. 20 C.F.R. § 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id.* In determining a claimant's RFC, the ALJ, further, considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described [more fully] in paragraphs (b), (c), and (d) of [§ 416.945]." 20 C.F.R. § 416.945(a)(4).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v. Astrue*, No. 5:10–cv–478–Oc–18TBS, 2011 WL 5357907, at *1-2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved*, 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), *and Scott v. Astrue*, No. CV 110–052, 2011 WL 2469832, at *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted*, 2011 WL 2461931 (S.D. Ga. June 17, 2011), *with Green v. Social Sec. Admin.*, 223 Fed. App'x 915, 923-24 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record

for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's decision to give less than controlling weight to such an opinion,[2] 223 Fed. App'x at 923-24; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **_nothing_** in *Green* can be read as suggesting anything contrary to those courts—including this one—that have staked the position that the ALJ must **_link_** the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work. *Compare, e.g., Saunders v. Astrue*, Civil Action No. 1:11cv308–WC, 2012 WL 997222, at *5 (M.D. Ala.

---

[2] An ALJ's articulation of reasons for giving less than controlling weight to a treating source's RFC assessment must, of course, be supported by substantial evidence. *See, e.g., Gilabert v. Commissioner of Soc. Sec.*, 396 Fed. App'x 652, 655 (11th Cir. Sept. 21, 2010) (per cuiam) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Soc. Sec. Admin.*, 389 Fed. App'x 944, 947-48 (11th Cir. July 28, 2010) (per curiam) (same).

Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying."), *with* 20 C.F.R. § 416.945(b), (c) & (d).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision. For example, in *Hanna*, the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .
>
> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .
>
> The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. ***But this conclusion is not clear from the record.*** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work. ***The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.*** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to

>   whether Hanna could perform his past relevant work.  ***Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."***

395 Fed. App'x at 635-36 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a ***sufficient rationale to link such evidence to the legal conclusions reached***.'  Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)) (emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted); *Dixon v. Astrue*, 312 Fed. App'x 226, 229 (11th Cir. Feb. 13, 2009) (per curiam) (after noting,"'[w]hile we may not supply a reasoned basis for [an] agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned[,]'" vacating a district court's decision to affirm the ALJ where "the ALJ's path [was] not reasonably discernible") (quoting *Zahnd v. Secretary, Dep't of Agric.*, 479 F.3d 767, 773 (11th Cir. 2007)).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner on appeal—using, for example, "the record as a whole" or pointing the Court to record evidence not mentioned in the ALJ's decision—but rather, must be

8

clearly set forth in the ALJ's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . .  There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].  However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.") (emphasis in original).

    B.    <u>The ALJ's Decision.</u>

The ALJ found the plaintiff's valvular heart disease, anemia, and chronic lymphedema to be severe impairments (R. 21) and determined that the plaintiff has the RFC to perform light work as defined in § 416.967(b) with certain additional restrictions:

> [she] can occasionally climb ladders, ropes, and scaffolds.  She must work in a ventilated work environment and avoid concentrated exposure to fumes, gases, or odors and extremes of temperature.  She must take regular breaks in order to sit and elevate her legs.  She can occasionally push and pull leg controls.  She can adapt to minimal changes in work setting, and she can do simple, routine, repetitive tasks.

(R. 22.)   As to the plaintiff's chronic lymphedema, the ALJ stated that the RFC "accounts for this impairment[] by indicating that the claimant will have to take regular breaks to elevate her legs, and she can only occasionally operate leg controls."   (R. 23-24.)

In making her RFC determination, the ALJ concluded that the opinion of the plaintiff's longtime treating physician, Stanley Barnes, should not be given controlling weight.  Dr. Barnes, whose records as to the plaintiff appear in the administrative record at R. 188-213, 229-231, and 242-246, began treating the plaintiff in August, 2005 (*see* R. 189).   On March 30, 2009, he completed a physical capacities evaluation (R. 226), in which he determined, among other things, that the plaintiff can sit for not more than two hours and can stand/walk combined for not more than two hours in the course of an eight-hour workday, and a clinical assessment of pain (R. 227-228), in which he determined that the plaintiff has pain present in such an extent as to be distracting to the adequate performance of daily activities or work and that physical activity, including walking and standing, greatly increases the plaintiff's pain to such a degree as to cause distraction from or total abandonment of tasks (R. 227).

> As to Dr. Barnes's opinion, the ALJ determined that it should be
>
> > given little weight because it was not supported by the objective medical evidence.  For instance, there is no MRI evidence showing results that would support that level of pain or the level of restriction that Dr. Barnes indicated was related to the claimant's musculoskeletal impairments (All Exhibits).  On February 16, 2009, Dr. Barnes reported that they did an x-ray of the claimant's lumbar spine at her request and they did not find anything diagnostically significant (Exhibit 7F, page 2). . . .  [As to the claimant's] lymphedema, [ ] there is no objective evidence that these impairments would produce the level of pain of the need for the restrictions described by Dr. Barnes. . . .

(R. 24.)

Although the ALJ concluded that Dr. Barnes's opinion should be given little weight, she considered "[t]he opinion the State agency examiner[, rendered on January 8, 2009,] . . . persuasive"—"[T]he State agency medical examiner opined that the claimant could perform medium level work which includes the ability to occasionally lift and carry up to fifty pounds, the ability to stand or walk for six hours out of eight, and to sit for six hours out of eight (Exhibit 4F, page 2 [R. 216])." (R. 24.) The ALJ, however, ultimately rejected that RFC assessment as well, determining that, "given the diagnoses of chronic lymphedema and severe anemia, the residual functional capacity [should be] reduced to light." (R. 24.)

      C.      Lack of Substantial Evidence—reliance on the opinion of an SDM; failure to explain "regular breaks."

The ALJ's RFC determination is not based on substantial evidence for two reasons, one of which compounds the error of the other. First, to the extent the RFC assessment completed by "the State agency examiner" (R. 215-222) is an RFC assessment by a Single Decision Maker (or "SDM") (*see* R. 222 (indicating that Sandra H. Knox, whose name appears in the signature line at the conclusion of the report, is an SDM), it is entitled to *no weight*. As the Commissioner conceded recently, in *Stone v. Astrue*, No. CA 11–00517–C, 2012 WL 3288718 (S.D. Ala. Aug. 10, 2012), an SDM "is not a medical source and her conclusions [are] not entitled to *any* weight[,]" *id.* at *3 (quoting the Commissioner's brief (citing, in turn, 20 C.F.R. § 404.906)) (emphasis in the Court's opinion); *see also Siverio v. Commissioner of Soc. Sec.*, 461 Fed. App'x 869, 872 n.3 (11th Cir. Feb. 23, 2012) (per curiam) ("[T]he SSA's Program Operations Manual System ('POMS') explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that SDM-completed forms are not

opinion evidence at the appeals level.") (citation and internal quotation marks omitted).

However, reliance on an RFC assessment completed by an SDM is not always fatal.

> If the ALJ's RFC is ***otherwise supported by substantial evidence***, any reliance on a source entitled to no weight[, such as an SDM,] may be harmless error, and, if so, the Court will affirm the Commissioner's decision [if that decision] provides the necessary linkage between the RFC assessment and specific[, proper] evidence in the record bearing upon the plaintiff's ability to perform the physical, mental, sensory, and other requirements of work.

*Stone*, 2012 WL 3288718, at *3 (emphasis in original).

But here, aside from any reliance on a source entitled to no weight, there is another problem with the ALJ's RFC assessment: the ALJ fails to explain her decision to *further limit* the plaintiff's ability to perform light work by requiring that the plaintiff "must take regular breaks in order to sit and elevate her legs" to account for her chronic lymphedema. (R. 22-24.)

In his brief, the Commissioner contends that

> it is apparent that the ALJ's usage of the terms "regular breaks" and "regularly scheduled breaks[," in her hypothetical to the vocational expert,] was intended to mean customary, usual, or normal breaks – not additional break time in excess of that generally permitted by employers, as alleged by Plaintiff. Indeed, the ALJ did not conclude that Plaintiff would require additional break time beyond that generally permitted by employers; rather, the ALJ simply found that Plaintiff must be permitted to use her "regularly scheduled breaks" in order to "sit and elevate her legs" (Tr. 22, 56-57). Notably, Social Security Ruling 96-9p indicates that regular breaks include "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *6 (1996).

(Doc. 19 at 9.)

Unfortunately, that is not clear in the ALJ's decision. The ALJ first found "that the claimant has the residual functional capacity to perform light work *as defined in* 20

CFR 416.967(b)."  (R. 22 (emphasis added).)[3]  The ALJ then imposed additional limitations on the plaintiff's ability to perform light work.  The two additional limitations were meant to "account for" the plaintiff's chronic lymphedema.  (*See* R. 23-24.)  The first additional limitation is that "[s]he can occasionally push and pull leg controls."  (R. 22.)  Clearly, this limits a portion of the definition of light work—"[l]ight work involves . . . sitting most of the time with some pushing and pulling of arm or leg controls."  So too does the second limitation—the requirement that the plaintiff have the ability to "take regular breaks in order to sit and elevate her legs"—modify the general definition of light work, which, for example, may "require a good deal of walking or standing[.]"  *Compare id.*, *with* § 416.967(b) ("To be considered capable of performing a full or wide range of light work, you must have the ability to do ***substantially all*** of these activities.") (emphasis added).  Accordingly, the Commissioner's explanation for why the ALJ imposed the requirement that the plaintiff "must take regular breaks in order to sit and elevate her legs"—which is "regular breaks" does not mean additional break time—makes little sense.  If it does not mean additional break time, why did the ALJ have to include it in her RFC determination, as

---

[3]     Light work is defined in the regulations as

> involve[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.*  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b) (emphasis added).

an additional limitation on the plaintiff's ability to perform light work? [4]

Further, more troubling than any confusion caused by the use of "regular breaks" is that—even if the Court accepts that the reasons given by the ALJ for not giving controlling weight to Dr. Barnes's opinions are supported by substantial evidence[5]—once the erroneously-relied-on RFC assessment by the SDM is removed from consideration, there is not substantial evidence in the record to support the ALJ's determination that the plaintiff retains the ability to perform light work with the additional limitations.

Although the Commissioner's brief points to medical treatment notes and evidence regarding the plaintiff's ability "to perform a wide range of activities of daily living" (Doc. 19 at 16-17), the ALJ's decision cites only to the opinions of Dr. Barnes and the SDM as evidence to show the plaintiff's ability to perform the physical requirements of work. *See, e.g., Saunders*, 2012 WL 997222, at *5 (concluding that, where the record does not include an evaluation of the plaintiff's ability to perform the physical requirements of work, "[i]t is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently'

---

[4] To the extent the ALJ has determined that the plaintiff needs breaks in addition to the regular breaks, set forth in SSR 96-9p, that obviously impacts the plaintiff's ability to perform work. *Cf. Borski v. Barnhart*, 33 Fed. App'x 220, 224-25 (7th Cir. Apr. 5, 2002) ("The Social Security Administration has recognized that someone who needs to go regularly from one position to the other cannot do either [light or sedentary] work unless the need to change positions can be 'accommodated by scheduled breaks and a lunch period.' Where scheduled breaks are not enough, the applicant needs a so-called 'sit/stand option.'" (quoting SSR 96-9p).

[5] A finding that the ALJ failed to articulate reasons, supported by substantial evidence, for rejecting a treating source's opinion, or a portion thereof, ends the Court's review of an ALJ's RFC determination. *See, e.g., Thomas v. Astrue*, No. CA 11–0406–C, 2012 WL 1145211, at *9 (S.D. Ala. Apr. 5, 2012) ("Because the undersigned finds that the ALJ did not explicitly articulate an adequate reason, supported by substantial evidence, for rejecting a portion of [the treating physician's] PCE assessment, this Court must necessarily find that the ALJ's RFC determination is not supported by substantial evidence.").

and sit, stand and/or walk for six hours in an eight hour workday"); *cf. Dunham v. Astrue*, No. 1:09CV 53 SNLJ(LMB), 2010 WL 2553878 (E.D. Mo. May 6, 2010) ("There is no opinion from any physician, treating or consulting, regarding plaintiff's ***ability to function in the workplace*** with his combination of impairments. As such, there is no medical evidence in the record suggesting that plaintiff can, or cannot, perform light work.") (emphasis added), *report & recommendation adopted*, 2010 WL 2553882 (E.D. Mo. June 23, 2010).

## Conclusion

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying the plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

**DONE and ORDERED** this the 4th day of September, 2012.

                                              s/WILLIAM E. CASSADY
                                              **UNITED STATES MAGISTRATE JUDGE**