IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HENDRIETTA SALTER,                      :

    Plaintiff,                               :

v.                                                    :        CA 11-00681-C

MICHAEL J. ASTRUE,
Commissioner of Social Security,        :

    Defendant.                             :

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court, pursuant to 28 U.S.C. § 636(c) and Rule 54(d)(2)(A) of the Federal Rules of Civil Procedure, on an application for an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (the "EAJA") (Doc. 24), filed November 29, 2012, and the Commissioner's objection to the application (Doc. 27), filed December 14, 2012.

Upon consideration of all pertinent materials contained in this file, it is **ORDERED** that *the plaintiff* should receive a reasonable attorney's fee in the amount of **$4,929.86** under the EAJA for legal services rendered by her attorney in this Court.  *See Astrue v. Ratliff*, ___ U.S. ___, 130 S. Ct. 2521, 2526 & 2526-27 (2010) ("Ratliff [] asserts that subsection (d)(1)(A)'s use of the verb 'award' renders § 2412(d) fees payable directly to a prevailing party's attorney[.] . . . We disagree. . . .  The plain meaning of the word 'award' in subsection (d)(1)(A) is [] that the court shall 'give or assign by . . . judicial determination' to the 'prevailing party' (here, Ratliff's client Ree) attorney's fees in the amount sought and substantiated under, inter alia, subsection (d)(1)(B). . . .  The fact that the statute awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right does not establish that the statute 'awards' the

fees directly to the attorney.  For the reasons we have explained, the statute's plain text does the opposite—it 'awards' the fees to the litigant[.]"); *see also Brown v. Astrue*, 271 Fed. App'x 741, 743 (10th Cir. Mar. 27, 2008) ("The district court correctly held that Mr. Brown's assignment of his right in the fees award to counsel does not overcome the clear EAJA mandate that the award is to him as the prevailing party, and the fees belong to him.  Thus, the district court correctly declined to award the fees directly to counsel.").  Accordingly, the Court disregards the Limited Power of Attorney (Doc. 24-2) appended to the application, which is (at least in part) essentially an assignment (*see id.*, ¶ 2 (appointing counsel the ability to "[a]pply to the government and/or court to have any [EAJA] settlement checks made payable directly to [counsel]")).[1]

## Discussion

1.  Procedural Background.

On September 4, 2012, this Court entered a Rule 58 judgment reversing and remanding this cause to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.  (Doc. 23; *see also Salter v. Astrue*, No. CA 11–00681–C, 2012 WL 3817791 (S.D. Ala. Sept. 4, 2012) (mem. op. & order).)  The

---

[1] Where, as is the case here, the Court is provided an executed "assignment,"

> [i]n light of *Ratliff*, [the best] practice [is] to simply award the EAJA fees directly to Plaintiff as the prevailing party and remain silent regarding the direction of payment of those fees.  It is not the duty of the Court to determine whether Plaintiff owes a debt to the government that may be satisfied, in whole or in part, from the EAJA fees award.  The Court leaves it to the discretion of the Commissioner to determine whether to honor Plaintiff's assignment of EAJA fees.

*Varner v. Astrue*, No. 3:09–cv–1026–J–TEM, 2011 WL 2682131, at *2 (M.D. Fla. July 11, 2011); *accord Dacosta-Lima v. Astrue*, No. 3:11–cv–777–J–32TEM, 2012 WL 177398, at *3 (M.D. Fla. Jan. 23, 2012); *Morris v. Astrue*, No. 2:09–CV–595–FtM–36SPC, 2012 WL 260041, at *2 (M.D. Fla. Jan. 30, 2012).

application for an award of attorney's fees under the EAJA (Doc. 24), filed on November 29, 2012, requests attorney's fees in the amount of $4,929.86 to compensate the plaintiff's attorney for the time (26.80 hours) spent representing her before this Court as of the date of the filing of the fee application (*see generally id.*).

In his objection to the application, the Commissioner does not contest the reasonableness of the requested attorney's fees.  Instead, he contends that no attorney's fees should be awarded in this matter because his position in this case was substantially justified (*see* Doc. 27 at 1-4) and that, if the Court determines otherwise, any attorney's fees awarded should be awarded directly to the plaintiff (*see id.* at 4-6).[2]

2. Substantial Justification.

The Equal Access to Justice Act requires a district court to "award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . , including proceedings for judicial review of agency action, brought by or against the United States . . . , unless the court finds that the position of the United States was **substantially justified** or that special circumstances make an award unjust."   28 U.S.C. § 2412(d)(1)(A) (emphasis added).

While "'[s]ubstantially justified' is one of the myriad phrases in the law that has no precise or fixed definition[, t]he Supreme Court has said that it means 'justified in substance or in the main.'"   *Grieves v. Astrue*, 600 F. Supp. 2d 995, 999 (N.D. Ill. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *see id.* ("A position that is 'substantially justified' must have a 'reasonable basis both in law and in fact.'") (quoting

---

[2] The undersigned obviously agrees with the Commissioner's second contention. *See supra*, pages 1-2 and footnote 1.

*Pierce*, 487 U.S. at 565); *cf. Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004) (a position is substantially justified if a "reasonable person could believe the position was correct").

> EAJA decisions necessarily involve exercises of discretion because of the sheer impracticability of formulating a rule of decision in such cases. Questions that arise under the Act, like many that arise in litigation generally, are not amenable to regulation by rule because they involve multifarious, fleeting, special, narrow facts that utterly resist generalization—at least, for the time being.

*Grieves*, 600 F. Supp. 2d at 999 (internal citations and quotation marks omitted and other modifications to original).

> It is also essential to recall that "a position can be justified even though it is not correct," *Pierce*, 487 U.S. at 566, n.2, and "[the government] could take a position that is substantially justified, yet lose [on the merits]." *Id.* at 569. Analysis of questions of substantial justification must take into account the government's position in the underlying action and the litigation posture it took while defending the validity of that action in court. 28 U.S.C. § 2412(d)(2)(D). But, substantial justification should not be confused with the "substantial evidence" standard that applies to a court's initial review of the case. Indeed, the Supreme Court has cautioned that consideration of a fee petition "'should not result in a second major litigation.'" *Pierce*, 487 U.S. at 563. Thus, an EAJA petition requires the court to revisit the legal and factual circumstances of this case from a different perspective—the elusive standard of substantial justification—than it did in reviewing the record on the initial go-round to determine whether there was substantial evidence to support the conclusion.

*Id.* at 1000 (internal citations modified and some omitted); *but see Cockerham v. Secretary of Health & Human Servs.*, CIV.A. No. 87–1276, 1990 WL 11355, at *3 (E.D. La. Jan. 31, 1990) ("[T]he corresponding definition of 'substantially justified' used in the EAJA means 'to be justified in substance or in the main . . . the action must be justified to a degree that could satisfy a reasonable person, and must have a reasonable basis in both law and fact.' ***Clearly, definitions of the terms 'substantial evidence' and***

*'substantially justified' are analogous; a reasonable mind must conclude that when the [Commissioner]'s position was not based upon substantial evidence, it cannot be found substantially justified.*") (quoting *Pierce*, 487 U.S. at 565) (emphasis added); *Scott v. Barnhart*, No. 99 C 4651, 2003 WL 1524624, at *5 (N.D. Ill. Mar. 21, 2003) ("When a court finds [] a lack of connection between the evidence in the record and an ALJ's conclusion, it is appropriate to find the Commissioner's position not substantially justified.") (citations omitted).

Finally, "[i]t is the Court's reasoning underlying its decision to reject the Commissioner's position that matters most in determining whether the Commissioner's position was substantially justified." *Miller v. Commissioner of Soc. Sec.*, No. 5:11–cv–124–Oc–TBS, 2012 WL 5382115, at *3 (M.D. Fla. Nov. 1, 2012) (citing *United States v. Paisley*, 957 F.2d 1161, 1167 (4th Cir. 1992)).

In her appeal to this Court, the petitioner asserted three separate errors, *see Salter*, 2012 WL 3817791, at *2, but the Court determined that the decision of the Commissioner should be reversed and remanded solely because the ALJ's RFC determination was not based on substantial evidence, *see id.* at *6-8. The Court found that the RFC determination was not supported by substantial evidence "for two reasons, one which compounds the error of the other." *Id.* at *6.

> First, to the extent the RFC assessment completed by "the State agency examiner" (R. 215-222) is an RFC assessment by a Single Decision Maker (or "SDM") (*see* R. 222 (indicating that Sandra H. Knox, whose name appears in the signature line at the conclusion of the report, is an SDM), it is entitled to ***no weight***.

*Id.* (emphasis in opinion).

The Court then addressed "the ALJ['s failure] to explain her decision to *further limit* the plaintiff's ability to perform light work by requiring that the plaintiff 'must take regular breaks in order to sit and elevate her legs' to account for her chronic lymphedema."  *Id.* at \*7 (citing R. 22-24) (emphasis in opinion).  Finally, the Court noted it was most troubled by the fact that

> once the erroneously-relied-on RFC assessment by the SDM is removed from consideration, there is not substantial evidence in the record to support the ALJ's determination that the plaintiff retains the ability to perform light work with the additional limitations.
>
> Although the Commissioner's brief points to medical treatment notes and evidence regarding the plaintiff's ability "to perform a wide range of activities of daily living" (Doc. 19 at 16-17), the ALJ's decision cites only to the opinions of Dr. Barnes[, a treating source whose opinion was given little weight,] and the SDM as evidence to show the plaintiff's ability to perform the physical requirements of work.  *See, e.g., Saunders*[ *v. Astrue*, Civil Action No. 1:11cv308–WC, 2012 WL 997222, at \*5 (M.D. Ala. Mar. 23, 2012)] (concluding that, where the record does not include an evaluation of the plaintiff's ability to perform the physical requirements of work, "[i]t is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday"); *cf. Dunham v. Astrue*, No. 1:09CV 53 SNLJ(LMB), 2010 WL 2553878 (E.D. Mo. May 6, 2010) ("There is no opinion from any physician, treating or consulting, regarding plaintiff's *ability to function in the workplace* with his combination of impairments.  As such, there is no medical evidence in the record suggesting that plaintiff can, or cannot, perform light work.") (emphasis added), *report & recommendation adopted*, 2010 WL 2553882 (E.D. Mo. June 23, 2010).

*Id.* at \*8 (emphasis in opinion).

> In his opposition to the EAJA petition, the Commissioner
>
> respectfully submits that, even though his position that the ALJ's decision was based on substantial evidence was ultimately not persuasive to the Court, it was, nevertheless, substantially justified—that is, reasonable in law and fact.  The Commissioner took the position that it was apparent that the ALJ's usage of the terms "regular breaks" and "regularly scheduled breaks" in the hypothetical question and residual functional capacity finding meant customary, usual, or normal breaks – not

> additional break time in excess of that generally permitted by employers. This was a legitimate position for the Commissioner to take because the ALJ did not specify that Plaintiff would require additional break times beyond those generally permitted by employers. Instead, the ALJ found Plaintiff must be permitted to use her regular breaks in order to "sit and elevate her legs[.]"  Moreover, as the Commissioner noted, Social Security Ruling 96-9p states that regular breaks include "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."

(Doc. 27 at 3-4 (internal citations omitted).)

Thus, the Commissioner has merely addressed one of the reasons "underlying [the Court's] decision to reject the Commissioner's position" that the ALJ's decision was supported by substantial evidence.  *Miller*, 2012 WL 5382115, at *3.

The other reason—the SDM's RFC assessment was the sole evidence the ALJ relied upon to determine that the plaintiff retains the ability to perform light work with the additional limitations—is alone sufficient to find both the ALJ's decision not supported by substantial evidence and the Commissioner's position in this litigation not substantially justified.  In *Corona v. Astrue*, 170 Soc. Sec. Rep. Serv. 348, 2011 WL 4591958 (D. Colo. Oct. 4, 2011), after the district judge issued an oral ruling remanding the case because "the ALJ's assessment was not supported by substantial evidence" in part "because the ALJ relied entirely on the opinion of a non-physician [SDM] in assessing Plaintiff's capacity to perform light work," *id.* at *1, the magistrate judge rejected the Commissioner's attempt to justify the ALJ's reliance on the SDM's opinion, *see id.* at *2-3, and found that "[b]ased on the record and [the district judge's] oral ruling, . . . the Commissioner ha[d] not met his burden of showing that his litigation position was substantially justified to a degree that could satisfy a reasonable person. Therefore, an award of attorney fees [was] justified under the EAJA[,]" *id.* at *3.

Accordingly, the Commissioner's objection based on substantial justification is **OVERRULED**.

3. Prevailing Party and Timeliness.

Because the Commissioner makes no argument that plaintiff is not a prevailing party under the EAJA, the Court turns to other matters.

The EAJA requires a prevailing party to file an application for attorney's fees within thirty (30) days of final judgment in the action. 28 U.S.C. § 2412(d)(1)(B). The thirty-day clock did not begin to run in this case until the Court's September 4, 2012 Order and Judgment became final, which occurred at the end of the sixty (60) days for appeal provided under Rule 4(a)(1)(B)(iii) of the Federal Rules of Appellate Procedure, *see Shalala v. Schaefer*, 509 U.S. 292, 302 (1993), that is, November 3, 2012. Accordingly, the application filed in this case, bearing a date of November 29, 2012, was timely.

4. Fees Analysis.

Like 42 U.S.C. § 1988, the EAJA is a fee-shifting statute. And the Supreme Court has indicated that "'the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Watford v. Heckler*, 765 F.2d 1562, 1568 (11th Cir. 1985) (EAJA) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (§ 1988)); *see Jean v. Nelson*, 863 F.2d 759, 772-773 (11th Cir. 1988) (discussing the reasonableness of the hours expended in the context of contentions by the government that the fee requests were not supported by sufficient documentation and often involved a duplication of effort), *aff'd sub nom. Commissioner, I.N.S. v. Jean*, 496 U.S. 154 (1990).

> This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award

> of fees should submit evidence supporting the hours worked and the rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly.  The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." . . . Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's client also are not properly billed to one's *adversary* pursuant to statutory authority."

*Hensley*, 461 U.S. at 433-34 (citations omitted); *see also id.* at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."); *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) ("If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.' Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."); *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) ("Excluding excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis.").

In *Norman*, the Eleventh Circuit indicated that "the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed

and not the least time in which it might theoretically have been done." 836 F.2d at 1306.  Because the Commissioner interposes no objection to the fee petition, the Court finds that the plaintiff's counsel reasonably spent ten and ninety-five/hundredths (10.95) hours on legal tasks in this case.

With respect to a determination of the hourly rate to apply in a given EAJA case, for services performed by attorneys, the express language of the Act, as amended by the Contract with America Advancement Act of 1996, provides in pertinent part as follows:

> The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125.00 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A) (Cum. Supp. 1997).  In *Meyer v. Sullivan*, 958 F.2d 1029 (11th Cir. 1992), the Eleventh Circuit determined that the EAJA establishes a two-step analysis for determining the appropriate hourly rate to be applied in calculating attorney's fees under the Act.

> The first step in the analysis, . . . is to determine the market rate for "similar services [provided] by lawyers of reasonably comparable skills, experience, and reputation." . . . The second step, which is needed only if the market rate is greater than $[125] per hour, is to determine whether the court should adjust the hourly fee upward from $[125] to take into account an increase in the cost of living, or a special factor.

*Id*. at 1033-1034 (citations and footnote omitted).

For years, the prevailing market rate in the Southern District of Alabama has been $125.00 per hour.  *See, e.g., Willits v. Massanari*, CA 00-0530-RV-C; *Boggs v. Massanari*, 00-0408-P-C; *Boone v. Apfel*, CA 99-0965-CB-L.  This Court has adjusted that rate to account for the increase in the cost of living.  *Lucy v. Barnhart*, CA 06-0147-C,

Doc. 32. More specifically, the Court has adopted the following formula to be used in calculating all future awards of attorney's fees under the EAJA: "'($125/hour) x (CPI-U Annual Average "All Items Index," South Urban, for month and year of temporal midpoint )/ 152.4, where 152.4 equals the CPI-U of March 1996, the month and year in which the $125 cap was enacted.'"  (*Id*. at 11 (quoting Doc. 31 at 2).)

The temporal midpoint in this case was April, 2012, the complaint having been prepared and filed on December 2, 2011 (Doc. 1) and the Court having entered its order and judgment on September 4, 2012 (Docs. 22 & 23). The Court takes notice that the CPI-U for April, 2012 was 224.275. *See, e.g., Barker v. Astrue*, Civil No. 10–2057, 2011 WL 6033016, at *2 (W.D. Ark. Dec. 5, 2011) (taking judicial notice of the CPI-U South where the plaintiff's counsel failed to submit evidence of a CPI in support of his requested hourly rate) (citing FED. R. EVID. 201). Plugging the relevant numbers into the foregoing formula renders the following equation: ($125 x 224.275) / 152.4. Completion of this equation renders an hourly rate of **$183.95**. In consideration of the foregoing, the plaintiff is awarded an attorney's fee in the amount of **$4,929.86** under the EAJA for the 26.80 hours her attorney spent performing work traditionally performed by attorneys in Social Security cases.

## Conclusion

The Court, therefore, **ORDERS** that the plaintiff be awarded attorney's fees in the amount of **$4,929.86** under the Equal Access to Justice Act.

**DONE and ORDERED** this the 31st day of January, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**